UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROSE WETZEL and ) | | |
| MARK C. LADENDORF, P.C., ) | | |
| Plaintiffs, ) | | |
| ) | | |
| vs. ) | 1:04-cv-1799-SEB-VSS | |
| ) | | |
| LUMBERMENS MUTUAL CASUALTY ) | | |
| COMPANY, KEMPER INSURANCE ) | | |
| COMPANY, PLATINUM EQUITY, LLC, ) | | |
| BROADSPIRE SERVICES, INC., ) | | |
| NATIONAL LOSS CONTROL SERVICES ) | | |
| CORPORATION (NATLSCO, INC.), ) | | |
| ROBERT HURR, and ) | | |
| STEWART & IRWIN, P.C., ) | | |
| Defendants. ) | | |

## **ENTRY GRANTING PLAINTIFFS' MOTION FOR REMAND TO STATE COURT**

This matter is before the Court on Plaintiffs' Motion to Remand to Marion Superior Court pursuant to 28 U.S.C. §§ 1447(c) and 1452(d) and/or 28 U.S.C. §§ 1334(c)(1) or (2). Defendants removed the case to federal court because, they assert, the case actually involves assets of the bankruptcy estate of Interstate Brands Corporation ("Interstate Brands" or the "Debtor") and constitutes a "core" bankruptcy proceeding. Plaintiffs argue that their case was wrongly removed from state court, pursuant 28 U.S.C. § 1334, because it did not arise under the provisions of Title 11 of the United States Code (the "Bankruptcy Code") nor did it arise in the course of the Interstate Brands bankruptcy

proceedings. Plaintiffs further argue that there is no basis for asserting "related to" subject matter jurisdiction as their cause of action is wholly among non-debtors, does not involve the Debtor's property of the bankruptcy estate, and will not affect the administration of the bankruptcy estate. Finally, pursuant to 28 U.S.C. § 1447(c), Plaintiffs request that the Court award them their costs and expenses, including attorneys' fees, incurred in connection with removal of this case.

As we explain below, we GRANT Plaintiffs' Motion to Remand and their request for attorneys' fees.

## Factual Background

Plaintiffs allege that their claims arose out of a mediation session in the underlying litigation involving Rose Wetzel ("Wetzel) and Interstate Brands.[1] During the course of litigating the Personal Injury Lawsuit, the parties agreed to submit their dispute to mediation, as a result of which they reached a settlement requiring Interstate Brands to pay Plaintiff $1,225,000.00 (the "settlement amount") in exchange for dismissal of the Personal Injury Lawsuit with prejudice.[2] Interstate Brands was not directly represented

---

[1] On March 24, 2003, Wetzel filed a complaint against Interstate Brands d/b/a Wonderbread/Hostess Cake and Stephen L. Hauser (the "Personal Injury Defendants") in Marion Superior Court, which case is pending as Cause Number 49D12-0303-CT-000556 (the "Personal Injury Lawsuit").

[2] The parties' settlement was memorialized in a form Mediation Rule 2.7 Settlement Agreement providing that: "the defendant … has … agreed to pay the plaintiff … $1,225,000.00 ($ [sic] One million two hundred twenty five thousand) in exchange for a full and complete release of the defendant … and dismissal with prejudice." See Mediation Rule 2.7 Settlement Agreement, Resp. Ex. A (the "Settlement Agreement").

during the mediation sessions and instead was represented indirectly by Lumbermens Mutual Casualty Company ("Lumbermens"), Kemper Insurance Company ("Kemper"), Platinum Equity, LLC, ("Platinum"), Broadspire Services, Inc., ("Broadspire"), National Loss Control Services Corporation ("NATLSCO") and Robert Hurr ("Hurr"); (Lumbermens, Platinum, Broadspire, NATLSCO and Hurr are sometimes hereinafter referred to collectively as the "Insurance Defendants").  The Settlement Agreement was signed by Wetzel, Mark C. Ladendorf ("Ladendorf") (as counsel for Wetzel), Hurr (representing Broadspire and signing on behalf of Interstate Brands), and Michael Irwin ("Irwin") of Defendant Stewart & Irwin (as defense counsel in the Personal Injury Lawsuit).

Plaintiffs contend that on numerous occasions during the course of the mediation, Ladendorf asked the Defendants whether all the parties necessary to consummate a settlement were present and represented in the mediation.  Plaintiffs claim that each time this question was asked Hurr,[3] Irwin, and the Insurance Defendants assured Plaintiffs that no other parties were necessary to reach and consummate a settlement of the Personal Injury Lawsuit and that the Insurance Defendants were solely responsible for the payment of any settlement amount that would be due and payable to Plaintiffs.

Plaintiffs contend that their understanding from the mediation session was that the

---

[3] Plaintifs allege that defendant Hurr was present during the course of the mediation and held himself out to be the claims representative of the Insurance Defendants.  It is not clear, and in any event immaterial to our decision, whether other representatives of the Insurance Defendants were also present.

Insurance Defendants were to be liable for payment of the settlement amount to Plaintiffs and the Insurance Defendants and Interstate Brands, among themselves, would independently resolve the financial liability issues relative to allocation of the settlement funds pursuant to undisclosed contractual arrangements between and among the Insurance Defendants and Interstate Brands.[4] According to Plaintiffs, several times after settlement was reached on August 31, 2004, the Insurance Defendants, through their agents, represented to Ladendorf that the necessary checks had been prepared to fund the settlement and would be paid to Plaintiffs.

On September 24, 2004, defendant Stewart & Irwin, through Irwin, contacted Ladendorf to inform him that the Settlement Agreement would not be consummated because Interstate Brands had filed for bankruptcy under Chapter 11 of the Bankruptcy Code. Defendants claim that the automatic stay imposed by 11 U.S.C. § 362(a) bars the payment of any of the Debtor's pre-petition liabilities, including the payment of the settlement amount. Defendants contend that the automatic stay implicates the Settlement Agreement because, after making the settlement payment, the Insurance Defendants would reimburse themselves from collateral posted by the Debtor.[5]

---

[4] Plaintiffs' understanding is that the insurance policy between Interstate Brands and the Insurance Defendants contained a deductible in the amount of $1.5 million per accident, which would include the entirety of the settlement amount. Plaintiffs also contend that Interstate Brands procured a letter of credit from an as-yet unidentified bank in favor of Broadspire in the amount of $1.5 million, the amount of the self-retention clause in the insurance contract.

[5] The settlement amount falls entirely within the deductible of Interstate Brands's insurance policy.

**Procedural Background**

On October 7, 2004, Plaintiffs brought suit against Defendants in Marion Superior Court, under Cause No. 49D130410PL001915 (the "State Court Proceeding").  In the Complaint, Plaintiffs assert claims solely under Indiana law for breach of contract, promissory estoppel, and fraud.  Plaintiffs have not asserted any claims against Interstate Brands or against the insurance policy between Interstate Brands and Lumbermens.

On November 1, 2004, Defendants filed a Notice of Removal, pursuant to 28 U.S.C. §1452, and removed the State Court Proceeding to this court.[6]  In their Notice of Removal, Defendants asserted that the claims in the State Court Proceeding either arise under the provisions of the Bankruptcy Code,[7] arise in the course of the Bankruptcy Proceedings, or that the claims are "core" matters, pursuant to 28 U.S.C. § 157(b)(2)(A), (G), (M), and (O).[8]

---

[6] Contemporaneously with the Notice of Removal, the Insurance Defendants moved to transfer venue of the action to the United States District Court for the Western District of Missouri to permit automatic referral to the bankruptcy court handling the Interstate Brands bankruptcy proceedings. Plaintiffs have asked to defer the briefing, consideration and ruling on the venue transfer motion pending resolution of Plaintiffs' Motion to Remand and we granted Plaintiffs' motion.  Because we are remanding this action to state court, Defendants' Motion to Transfer Venue is now moot and accordingly <u>DENIED</u>.

[7] Defendants contend that the State Court Proceeding arises under the Bankruptcy Code insofar as the automatic stay precludes the payment that Plaintiffs seek to compel.

[8] The relevant Code sections state:

(2) Core proceedings include, but are not limited to–
    (A) matters concerning the administration of the estate;
            *      *      *
    (G) motions to terminate, annul, or modify the automatic stay;
(continued...)

On November 30, 2004, Plaintiffs moved to remand this case to the Marion Superior Court. Plaintiffs specifically contend that the two primary reasons Defendants stated as grounds for removal in the Notice of Removal are groundless. First, Plaintiffs argue that the plain language of the Complaint indicates that Plaintiffs' claims are not based on the Debtor's insurance policy. Second, Plaintiffs contend that the State Court Proceeding does not implicate the administration of the Debtor's bankruptcy proceeding because success by the Plaintiffs in the State Court Proceeding will cause the Insurance Defendants to draw on a letter of credit procured by Interstate Brands, which does not constitute property of the bankruptcy estate.

## **Legal Analysis**

*A.     Bankruptcy Jurisdiction of the District Court.*

As Plaintiffs claims are based entirely on state law and their suit does not meet the requirements of diversity jurisdiction, the jurisdiction of this court, if any, hinges on the relationship between the State Court Proceedings and the Interstate Brands bankruptcy proceedings. The jurisdiction of the federal courts is "grounded in and limited by statute," Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). The statutory limit on the

---

[8](...continued)
\*     \*     \*
(M) orders approving the use or lease of property, including the use of cash collateral;
\*     \*     \*
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

bankruptcy jurisdiction of the district courts, and by extension on the bankruptcy courts,[9] "extends to 'all civil proceedings arising under title 11 [of the U.S.Code], or arising in or related to cases under title 11.'" Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159, 161 (7th Cir. 1994) (quoting 28 U.S.C. § 1334(b)).

We first address whether Plaintiffs' claims "arise in" or "arise under" the Bankruptcy Code, the so-called "core" proceeding, and then address whether the State Court Proceeding is "related to" the Debtor's bankruptcy proceeding.

  *A.*  *Plaintiffs' Claims are not "core" proceeding*.

In their Notice of Removal, Defendants asserted that the State Court Proceedings are "core" matters of the Interstate Brands bankruptcy proceedings pursuant to 28 U.S.C § 157(b)(2)(A), (G), (M), and (O).[10] Plaintiffs counter that Defendants are extending the concept of a core proceeding beyond the permissible limitations of controlling case law.

The Seventh Circuit has defined a "core" proceeding as follows:

> Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body or law, normally state law.

---

[9] The district court may refer to the bankruptcy court, "'any or all proceedings arising under title 11 or arising in or related to a case under title 11.'" In re Fedpak Sys., Inc., 80 F.3d 207, 213 (7th Cir. 1995) (quoting 28 U.S.C. § 157(a)).

[10] Defendants specifically argue that the Plaintiffs' claims implicate: (1) a violation of the automatic stay, (2) insurance policies that are property of the Debtor's bankruptcy estate, and (3) the administration of the Debtor's bankruptcy proceedings. As the factual bases for these allegations more properly constitute "related to" jurisdiction, we address these contentions in more detail in subsection B, infra.

In re United States Brass Corp., 110 F.3d 1261, 1268 (7th Cir. 1997) (citations omitted). It is clear from Plaintiffs' complaint that their claims do not involve an action by or against the Debtor, Interstate Brands, nor is the Bankruptcy Code the source of Plaintiffs' rights or remedies. Accordingly, we conclude that the State Court Proceeding does not "arise under" the Bankruptcy Court.[11]

With respect to "arising in" jurisdiction, the Seventh Circuit explained that a district court has jurisdiction over "questions that arise during the bankruptcy proceeding and concern the administration of the bankrupt estate, such as whether to discharge a debtor." Zerand-Bernal Group, 23 F.3d at 162. Plaintiffs' claims, as presented in the Complaint, do not fall within the scope of "arising in" jurisdiction because, if Plaintiffs' allegations are to be believed, the relevant facts transpired before the commencement of the Interstate Brands bankruptcy proceedings and do not implicate the bankrupt estate.[12] As a result, we conclude that the State Court Proceeding does not "arise in" the Interstate Brands bankruptcy proceeding and, therefore, Plaintiffs' action is not a "core"

---

[11] If the Settlement Agreement creates on obligation on the part of the Debtor, as Defendants imply in their Response Brief, at 9-10, and 12, then this claim should be raised as an affirmative defense to absolve the Defendants of liability because Plaintiffs have chosen not to name the Debtor as a defendant. Plaintiffs' strategic choice, however, does not authorize the Court to re-write the Complaint or to find a basis for federal jurisdiction based on an affirmative defense that Defendants may or may not raise at trial.

[12] Whether Plaintiffs' claims implicate property of the bankruptcy estate is discussed in more depth in subsection B, infra.

proceeding.[13]

Finally, Defendants weakly argue that, by failing to strictly comply with the requirements of Federal Rule of Bankruptcy Procedure 9027(e)(3),[14] the Plaintiffs waived their right to dispute that their claims fall within this court's "core" jurisdiction. Specifically, Defendants contend that Plaintiffs did not, within ten days of removal, admit or deny that the proceedings were "core." The Plaintiffs did, however, dispute these allegations in their Motion to Defer Consideration of Defendants' Motion for Transfer of Venue, filed eleven days after the Notice of Removal.[15] In view of the other prompt filings by the Plaintiffs and because Rule 9027(e)(3) prescribes no penalty for failure to

---

[13] We also note that Defendants' attempt to engraft the State Court Proceeding onto the catch-all subcategories of 28 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate") and (O) ("other proceedings affecting the liquidation of the assets of the estate. . ." is unavailing. As explained in Barge v. Western Southern Life Ins. Co., "Such a broad interpretation would expand the core category beyond the limits contemplated by the [Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353 (1984)] and ignore the teaching of [Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)]." 307 B.R. 541, 544-45 (S.D.W.Va. 2004).

[14] Bankruptcy Rule 9027(e)(3) provides that:

Any party who has filed a pleading in connection with the removed claim or cause of action, other than the party filing the notice of removal, shall file a statement admitting or denying any allegation in the notice of removal that upon removal of the claim or cause of action the proceeding is core or non-core. If the statement alleges that the proceeding is non-core, it shall state that the party does or does not consent to the entry of final orders or judgment by the bankruptcy judge. A statement required by this paragraph shall be signed pursuant to Rule 9011 and shall be filed not later than 10 days after the filing of the notice of removal.

[15] The Plaintiffs also filed a timely Motion to Remand, within thirty days after the Notice of Removal, specifically contesting Defendants' allegation that the underlying claims in the State Court Proceeding are core to Interstate Brands's bankruptcy administration.

9

comply with the ten-day rule and further because defendants have shown no prejudice by this insubstantial violation, we decline to find waiver. See, also, Barge, 307 B.R. at 545-46 (declining to find waiver in a similar situation).[16]

> B.  *Plaintiffs' claims do not "relate to" the Interstate Brands bankruptcy proceeding.*

Defendants claim the State Court Proceedings "relate to" the Interstate Brands bankruptcy proceeding because Plaintiffs' claims implicate (1) a violation of the automatic stay, (2) insurance policies that are property of the Debtor's bankruptcy estate, and (3) the administration of the Debtor's bankruptcy proceedings. Plaintiffs counter that their claims involve only the Defendants and, if Plaintiffs are successful, the settlement amount will be satisfied by the letter of credit drawn up by the Debtor, which does not constitute part of the bankruptcy estate.

The Seventh Circuit interprets "related to" jurisdiction narrowly "out of respect for Article III as well as to prevent the expansion of federal jurisdiction over disputes that are best resolved by the state courts." In re Fedpak Sys., Inc., 80 F.3d 207, 213 (7th Cir.

---

[16] We also take issue with Defendants' misguided attempt to prevent Plaintiffs from contesting the subject matter jurisdiction of this Court by means of procedural defaults. Pursuant to 28 U.S.C. § 1447(c), after a state court proceeding has been removed, the question of subject matter jurisdiction in the district court may be raised any time before final judgment and remand is mandatory if the district court is found to lack subject matter jurisdiction. Moreover, an examination of the district court's subject matter jurisdiction does not depend on a motion being filed by one of the parties. Therefore, assuming *arguendo* that Plaintiffs were barred from contesting the "core" nature of their claims, we retain jurisdiction to raise the issue *sua sponte* whereupon Defendants would be forced to substantiate that the State Court Proceeding implicates "core" matters.

1995) (internal quotations omitted).  Acknowledging this limitation, the Seventh Circuit has explained that:

> the reference to cases related to bankruptcy cases is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum.

Zerand-Bernal Group, 23 F.3d at 162 (citing In re Xonics, 813 F.2d 127, 131 (7th Cir. 1987)).  The Seventh Circuit recognizes a secondary purpose for "related to" jurisdiction, that is, to force into the bankruptcy court all suits which may affect the amount of property in the bankruptcy estate, including suits to which the debtor is not a party.  Id. (citing In re Xonics, 813 F.2d 131; National Tax Credit Partners, L.P. v. Havlik, 20 F.3d 705, 709 (7th Cir. 1994); In re Turner, 724 F.2d 338, 341 (2d Cir. 1983) (Friendly, J.)).

The parties here agree that, generally speaking, the proceeds of an insurance policy are property of the bankruptcy estate.[17]  However, Plaintiffs distinguish their claims on the grounds that they do not involve any issues relating to the insurance entitlements of the Debtor because of the Debtor's side-agreement with the Insurance Defendants whereby the Insurance Defendants agreed to pay the settlement amount; since that amount was within the Debtor's deductible, the Insurance Defendants would be the ones to seek reimbursement by the Debtor.  Plaintiffs note that this arrangement was protected

---

[17] It is well-established that a debtor's insurance policies and the proceeds from those policies are property of the bankruptcy estate.  See, e.g., In re Fernstrom Storage and Van. Co., 938 F.2d 731, 735 (7th Cir. 1991).

11

by a letter of credit, which typically is not part of a bankruptcy estate.[18]

One would think it would be a simple task to determine whether Plaintiffs' claims are directed to the proceeds of the Debtor's insurance policy or to the letter of credit drawn up in their favor, as a third party beneficiary. Our efforts to resolve this dispute, however, have been impeded by Defendants' failure, despite possessing all the relevant knowledge and documents, to explain to us the exact nature of the relationship between the Insurance Defendants and the Debtor. We suspect Defendants' obfuscations may be intentional, given the shift in the characterization of this relationship by Defendants in their briefings to the Court once Plaintiffs invoked the substantial case law establishing that letters of credit are not property of the bankruptcy estate. Initially, in their Notice of Removal, Defendants explained the relationship between the Insurance Defendants and

---

[18] Although the Seventh Circuit has not definitively ruled on the matter, we agree with the majority position that a letter of credit and the proceeds therefrom are not property of the debtor's estate. See Kellogg v. Blue Quail Energy Inc. (In re Compton Corp.), 831 F.2d 586, 589 (5th Cir. 1987) (citing 11 U.S.C. § 541; In re W.L. Mead, Inc., 42 B.R. 57 (Bankr.Ohio, 1984); In re Lesiure Dynamics, Inc., 33 B.R. 171 (Bankr.Minn., 1983); In re North Shore & Central Illinois Freight Co., 30 B.R. 377 (Bankr.Ill., E.D.1983); In re M.J. Sales & Distributing Co., 25 B.R. 608 (Bankr.N.Y., 1982)); see also, LTRSCRED P 7.03(3)(D). As the Fifth Circuit explained in In re Compton:

> When the issuer honors a proper draft under a letter of credit, it does so from its own assets and not from the assets of its customer who caused the letter of credit to be issued. In re W.L. Mead; In re M.J. Sales. As a result, a bankruptcy trustee is not entitled to enjoin a post petition payment of funds under a letter of credit from the issuer to the beneficiary, because such a payment is not a transfer of debtor's property (a threshold requirement under 11 U.S.C. § 547(b)).

831 F.2d at 589. Defendants do not contest that letters of credit and their proceeds are not property of the bankruptcy estate.

the Debtor in terms remarkably consistent with Plaintiffs' subsequent allegations, referencing the deductible level of the Debtor's insurance policy as well as implying that side arrangements and a letter of credit exist.[19]  However, in their Response Brief, Defendants eschew these specifics, simply repeating instead the mantra that any payout the Insurance Defendants make under the Settlement Agreement would be funded from the Debtor's insurance policies.[20]  In fact, Defendants never mention the words "deductible" or "letter of credit" in their Response Brief, even in an effort to contradict

---

[19] In their Notice of Removal, Defendants stated:

> The claims pleaded in the Complaint implicate: . . . (iii) the administration of [Interstate Brands's] Bankruptcy Proceedings.  Specifically, the payment in question falls within the deductible layer of the estates' insurance policy.  After making this payment, the Insurance Defendants will reimburse themselves from collateral posted by [the Debtor].

Notice of Removal at ¶ 6.

[20]  See, e.g., Defs.' Resp. Brief at 2 (stating "The Insurance Defendants were to fund the settlement pursuant to and in accordance with the Debtor's insurance policy"); Id. at 5 (asserting, without explanation, that "any settlement payment therefore necessarily would be funded from the underlying insurance policies"); Id. at 7 (arguing that "whatever funds the Insurance Defendants must pay relative to the settlement remain proceeds of the Debtor's insurance policy"); Id. at 9 (claiming "If the Insurance Defendants are found liable and fund the Settlement Agreement from the Debtor's insurance policy, the amount of coverage remaining under that policy thereby will be diminished, leaving less for other creditors"); see also,  Id. at 9-10, (contending that "[Plaintiffs] can prove no liability of the Insurance Defendants without first implicating the Insurance Defendants' status as the Debtor's insurer and agent and seeking to recover from the insurance policy"); Id. at 12 (arguing "The Settlement Agreement clearly evidences that the Insurance Defendants were participating on behalf of an as the Debtor's agent. Accordingly, there can be no individual liability on behalf of the Insurance Defendants, meaning that the Plaintiffs must be seeking to recover from the Debtor and its estate").

the allegations made by Plaintiffs in their arguments to the Court.[21] We are left with the distinct impression that Defendants' sudden inability to provide the details of the contractual relationship between the Insurance Defendants and the Debtor reflects defense counsel's tacit acknowledgment that, though insurance proceeds are considered property of the bankruptcy estate, proceeds from a letter of credit are not property of the bankruptcy estate.

Because Defendants have failed to justify their assertion that Plaintiffs' claims seek to obtain property of the bankruptcy estate which would implicate the automatic stay or otherwise involve the administration of the Debtor's bankruptcy proceedings, we conclude that the State Court Proceedings do not "relate to" the Debtor's bankruptcy proceedings, depriving and this court of subject matter jurisdiction over this case.[22]

## Conclusion

Because the Plaintiffs' lawsuit has not been advanced against the Debtor as a named party and does not involve or implicate property of the Debtor's bankruptcy estate,

---

[21] Frankly, we are troubled by the failure of Defendants to address the issues of the deductible, especially since Defendants had already conceded that the settlement amount was within the deductible of the Debtor's insurance policy. Defendants' Response Brief fails to clarify why, in light of their earlier concession about the deductible, the Insurance Defendants were the party responsible for paying the settlement amount "in accordance with the Debtor's insurance policy" or why the payment of an amount entirely within the deductible impacts the amount of coverage remaining under the Debtor's insurance policy. Consequently, we have no reasonable basis to conclude that payment of the settlement amount implicates the Debtor's insurance policy.

[22] Lacking subject matter jurisdiction over this case, we decline to address the parties' arguments regarding mandatory or discretionary abstention under to 28 U.S.C. §§ 1334(c)(1) or 1334(c)(2), and 1452(b).

we conclude that this court lacks subject matter jurisdiction over this dispute. Accordingly, we <u>GRANT</u> Plaintiffs' Motion to Remand this case to the Marion Superior Court and award attorneys' fees to Plaintiffs, pursuant to 28 U.S.C. §§ 1447(c).[23]

It is therefore ordered that this cause be and the same is <u>REMANDED</u> to the Marion Superior Court, Cause No. 49D130410PL001915.

IT IS SO ORDERED.

Date: April 26, 2005

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copy to:

David J. Fischer
WILDMAN HARROLD ALLEN & DIXON
fischer@wildmanharrold.com

Jeffrey L. Gansberg
WILDMAN HARROLD ALLEN & DIXON
gansberg@wildmanharrold.com

G. Ronald Heath
HOOVER HULL BAKER & HEATH LLP
grheath@hooverhull.com

Scott Stuart Morrisson
KRIEG DEVAULT
smorrisson@kdlegal.com

C. Daniel Motsinger
KRIEG DEVAULT, LLP
cmotsinger@kdlegal.com

John E. Taylor
SOMMER BARNARD ATTORNEYS PC
jtaylor@sommerbarnard.com

Jonathan W. Young
WILDMAN HARROLD ALLEN & DIXON
young@wildmanharrold.com

---

[23] In light of this remand to state court, Defendants' Motion to Transfer Venue is moot and accordingly <u>DENIED</u> as such. Any disputes that may arise over the amount of the attorneys fees can be resolved in state court as well.